**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ONEIDA INDIAN NATION,**

                      **Plaintiff,**

  vs.                                                  5:17-cv-913
                                                                 (MAD/TWD)

**UNITED STATES DEPARTMENT OF**
**THE INTERIOR,**

                      **Defendant.**
_____

**APPEARANCES:**                                  **OF COUNSEL:**

**ONEIDA INDIAN NATION**            **MEGHAN MURPHY BEAKMAN, ESQ.**
5218 Patrick Road
Verona, New York 13478
Attorney for Plaintiff

**ZUCKERMAN, SPAEDER LAW FIRM**    **MICHAEL R. SMITH, ESQ.**
1800 M Street, N.W.                         **DAVID A. REISER, ESQ.**
Suite 1000
Washington, District of Columbia 20036-5802
Attorneys for Plaintiff

**HOLLAND & HART LLP**                **THOMAS L. SANSONETTI, ESQ.**
6380 S. Fiddlers Green Circle
Suite 500
Greenwood Village, Wyoming 80111
Attorney for Plaintiff

**U.S. DEPARTMENT OF JUSTICE**      **REUBEN SCHIFMAN, AUSA**
**NATURAL RESOURCES DIVISION**
601 D St. NW
Washington, District of Columbia 20004
Attorney for Defendant

**OFFICE OF THE UNITE STATES**      **WILLIAM F. LARKIN, AUSA**
**ATTORNEY - SYRACUSE**
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198
Attorney for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On August 17, 2017, Plaintiff Oneida Indian Nation commenced this action against Defendant United States Department of the Interior ("Defendant" or the "Department") pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq*. On November 27, 2017, the Department moved to dismiss for lack of subject matter jurisdiction and failure to state a claim. *See* Dkt. No. 14. For the following reasons, the Department's motion to dismiss is granted.

### II. BACKGROUND

In 1794, the United States of America recognized the Oneida Nation when it entered into the Treaty of Canadaigua. *See* Dkt. No. 1 at ¶ 16. In the years following the treaty, the Oneida Nation split after some members sold a portion of the Oneida Nation's land and formed an independent successor tribe. *See id.* at ¶¶ 17-18. This new tribe entered into treaties with the United States that established a new reservation near Green Bay, Wisconsin. *See id.* at ¶ 17. The United States recognized the Oneida Nation of New York ("Plaintiff") and the Oneida Tribe of Indians of Wisconsin ("OTIW") as distinct entities and dealt with them individually. *See id.* Since the initial schism, the OTIW has neither resided in or exercised tribal governance in New York. *See id.*

In 1934, Congress passed the Indian Reorganization Act of June 18, 1934, 48 Stat. 984. "[T]he [Indian Reorganization Act] was designed to provide meaningful self-government to Indian people through reorganization of tribal governments under written constitutions." Timothy W. Joranko & Mark C. Van Norman, *Indian Self-Determination at Bay: Secretarial Authority to Disapprove Tribal Constitutional Amendments*, 29 Gonz. L. Rev. 81, 90 (1994). After the Indian

2

Reorganization Act came into law, the Department conducted separate tribal elections for Plaintiff and the OTIW to determine whether either tribe would elect to be reorganized under the Indian Reorganization Act. *See* Dkt. No. 1 at ¶ 21. The OTIW voted to reorganize under a written constitution, while Plaintiff did not. *See id.*

In 1979, the Department began to periodically publish a list of all federally recognized tribal entities. *See id.* at ¶ 22. This list identified which tribal entities were recognized by the United States. *See id.* In 1994, congress passed the Federally Recognized Indian Tribe List Act of 1994 (the "List Act"), which mandated that the Secretary of the Interior periodically publish the list of federally recognized tribal entities in the Federal Register. *See id.* at ¶ 23; *see also* Pub. L. No. 103–454, § 103, November 2, 1994. From 1979 to 2016, Plaintiff was listed as the "Oneida Nation of New York." *See* Dkt. No. 1 at ¶ 24. From 1979 to 2016, the OTIW was listed as some variation of the "Oneida Tribe of Indians of Wisconsin." *See id.*

In late 2010, the OTIW's government passed a resolution requesting a secretarial election to amend the tribe's constitution pursuant to 25 U.S.C. § 5123. *See id.* at ¶ 33. Among the amendments, the OTIW intended to change its name from "Oneida Tribe of Indians of Wisconsin" to "Oneida Nation." *See id.* On October 11, 2011, the Department's Midwest Regional Office advised the OTIW that "[n]one of the proposed amendments appear to be contrary to law" and permitted the secretarial election to proceed. *See id.* at ¶ 36. The Midwestern Regional Office did not notify Plaintiff that it was reviewing the proposed amendments. *See id.* at ¶ 38.

Although the Department concluded that the name change was not contrary to any applicable law, it nonetheless informed the OTIW

> that the name "Oneida Tribe of Indians of Wisconsin" has a long
> history, including the reorganization under the Indian

3

> Reorganization Act. Changing the name will cause confusion for a
> number of entities engaged in business with the Oneida Tribe as
> well as other governments. Compounding this difficulty will be the
> name of the tribe in the state of New York, called the "Oneida
> Nation of New York". While the two names would not be exactly
> the same[,] they are close enough so that they will undoubtedly be
> confused more often than they are now. The Oneida Nation of New
> York is often referred to as the Oneida Indian Nation, including
> some self-determination contracts with the Bureau of Indian
> Affairs, which will compound the existing confusion over this
> matter.

*Id.* (emphasis omitted). While the OTIW response to the letter recognized the legitimacy of the Department's concerns, the tribe nonetheless proceeded with the election. *See id.* at ¶¶ 38-39. On May 2, 2015, the Department conducted an election and the majority of the OTIW voted to adopt the proposed amendments, including the name change. *See id.* at ¶ 40. The amendments were approved by the Midwest Regional Office as not contrary to applicable law on June 16, 2015. *See id.* at ¶ 41.

In late 2015, Plaintiff learned that the OTIW was planning to host a professional golf tournament on its reservation entitled the "Oneida LPGA Classic." *See id.* at ¶ 49. Plaintiff, which had invested tens of millions of dollars establishing its own golf course, objected and stated in a November 25, 2015 letter that "Oneida" and "Oneida Nation" were its federally registered trademarks. *See id.*

On May 4, 2016, the Federal Register published a revised list of federally recognized tribal entities identifying the OTIW as the "Oneida Nation." *See id.* at ¶ 42. Upon learning of the official change in the Federal Register, Plaintiff requested that the Department initiate a process to reconsider its approval of the OTIW's name-change amendment. *See id.* at ¶ 53. The Department declined to reconsider approval of the amendment and noted that the Department's policy is to automatically adopt any name chosen by a tribal entity. *See id.* at ¶ 54. The

4

Department noted that creating such a process would require the Department to engage in notice and comment rulemaking and would be controversial with some tribes. *See id.* In response to its unsuccessful attempt to initiate a reconsideration proceeding, Plaintiff attempted to mitigate the effects of the name change by removing the geographic designation attached to its name and formally changing Plaintiff's name to "Oneida Indian Nation." *See id.* at ¶ 55.

On January 16, 2017, the OTIW notified Plaintiff in a letter that the federal name change entitled the OTIW to use the "Oneida Nation" name and that Plaintiff could no longer refer to itself as "Oneida Nation." *See id.* at ¶ 50. Specifically, the letter

a. invoked the decisions to claim that the Wisconsin tribe had a right to use the "Oneida Nation" name with no clarifying reference to Wisconsin;

b. stated that [Plaintiff] . . . "has never been federally recognized as Oneida Nation;"

c. threatened to petition to cancel [Plaintiff's] registered trademarks unless [Plaintiff] would enter into an agreement permitting the [OTIW] to market itself under the newly-federally approved name "Oneida Nation;" and

d. insisted that [Plaintiff] never again "refer to itself as the Oneida Nation, which is the federally recognized name of [the OTIW]."

*Id.*

On June 27, 2017, the OTIW filed a petition with the Trademark Trial and Appeal Board ("TTAB") to initiate an inter-partes review proceeding to cancel Plaintiff's trademark registration. *See id.* at ¶ 51. According to Plaintiff, the OTIW argued that it had legal rights to the name because it was recognized by the federal government on the list. *See id.* The petition stated that because the Bureau of Indian Affairs approved the name change, the OTIW should be entitled to use its federally recognized name. *See id.* at ¶ 52. The petition further argued that both groups

5

use of "Oneida" was "likely to cause confusion, mistake, or deception," Plaintiff's trademark should be cancelled. *Id.* Finally, the OTIW argued that in light of the Department approving and listing the name change, the OTIW should be recognized as having superior rights to the "Oneida" mark. *See id.*

On August 17, 2017, Plaintiff filed this action in the Northern District of New York asserting two claims under the Administrative Procedure Act. *See* Dkt. No. 1. Plaintiff's first claim is that the Assistant Secretary's decision to publish the OTIW's changed name in the Federal Register was arbitrary and capricious, an abuse of discretion, and otherwise contrary to applicable law. *See id.* at ¶¶ 56-65. Plaintiff's second claim is that the Midwst Regional Office's decision to hold and approve the secretarial election was improper as the decision approved a constitutional amendment that was in violation of 25 U.S.C. § 5123, which forbids the Secretary from approving any amendments to tribal constitutions that are contrary to applicable laws. *See id.* at ¶¶ 66-80.

On September 12, 2017, the OTIW filed an amended consolidated petition with the TTAB. *See* Dkt. No. 23-2 at 2. The amended petition argues that three of Plaintiff's registered marks should be cancelled. *See id.* at ¶ 19. The OTIW's grounds for cancellation fall into three categories. First, Plaintiff abandoned, failed to use, never used, and never intended to use the registered marks. *See id.* at ¶¶ 136-71, 180-86, 190-93, 198-200, 207-13. Second, Plaintiff's mark resembled the OTIW's mark, who had been using "Oneida" prior to January 26, 2006. *See id.* at ¶¶ 187-89, 214-16. Third, Plaintiff's agents repeatedly committed fraud in the course of registering the marks and filing its Statements of Use by knowingly not disclosing the OTIW's use of "Oneida." *See id.* at ¶¶ 131-35, 172-79, 194-97, 201-06. Only two of this third category of claims are based on filings that occurred after the Department approved the OTIW's final

6

constitutional amendment—one from July 31, 2015 and one from August 10, 2015. *See id.* at ¶¶ 176, 202.

On December 21, 2017, Plaintiff moved for the TTAB to suspend the cancellation proceeding pending a final determination in this action. *See* Dkt. No. 19-1 at 2. On January 23, 2018, the TTAB granted the motion and suspended the proceedings. *See id.* The OTIW requested that the TTAB reconsider its decision to suspend the cancellation proceeding, but on July 18, 2018, the Board denied its request. *See* Dkt. No. 30 at 2.

On August 15, 2018, Plaintiff submitted a letter to the Court that contained two cases of parties confusing Plaintiff with the OTIW. *See* Dkt. No. 31 at 1. The first was an email exchange between Plaintiff and the Indian Health Service. *See* Dkt. No. 31-1 at 4. On July 20, 2018, the Indian Health Service mistakenly sent a Request for Corrective Action Plan to Plaintiff regarding the OTIW's failure to follow proper vender verification procedures. *See id.* at 2-3. On the morning of July 24, 2018, Plaintiff's associate general counsel notified the Indian Health Service that it had made an error. *See id.* at 4. By the end of the day, the Indian Health Service acknowledged its error and rescinded the request. *See id.* The second case of confusion was an invoice from Purpora Engineering, addressed to what appears to be the OTIW's correct physical address, that was mistakenly emailed to Plaintiff on January 17, 2018. *See* Dkt. No. 31-2 at 2-3.

### III. DISCUSSION

**A.     Standard of Review**

When a party moves to dismiss a claim pursuant to Rule 12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citations omitted). For purposes of such a motion, "the allegations in the complaint are not controlling . . . and only uncontroverted factual

7

allegations are accepted as true. . . ." *Id.* (internal citations omitted). Both the movant and the pleader are permitted to use affidavits and other pleading materials to support and oppose the motion to dismiss for lack of subject matter jurisdiction. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted). "Furthermore, 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Gunst v. Seaga*, No. 05 Civ. 2626, 2007 WL 1032265, *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)); *see also State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007) (holding that, in a motion to dismiss for lack of subject matter jurisdiction, a court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits").

**B.     Article III Standing**

Unless a plaintiff has Article III standing, a court lacks subject matter jurisdiction to hear their claim. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish Article III standing, a plaintiff bears the burden of establishing three "irreducible constitutional minimum" elements. *See id.* "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

When an "asserted injury arises from the government's allegedly unlawful regulation . . . of someone else, much more is needed." *Lujan*, 504 U.S. at 562. "[I]t becomes the burden of the plaintiff to adduce facts showing" that the third party will act or has acted in a "manner as to produce causation and permit redressability of injury." *Id.* "Thus, when the plaintiff is not

8

himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish." *Id.* (quotation omitted).

Plaintiff claims that it has standing because it has suffered two injuries in fact. First, Plaintiff argues that the Department's actions caused the OTIW to initiate its TTAB cancellation proceeding. Second, Plaintiff claims that the Department's actions allow the OTIW to conduct business in a manner that will create confusion between the OTIW and Plaintiff.

### *1. Possible Prejudice in the TTAB Proceeding*

Plaintiff claims that the OTIW's cancellation action constitutes an injury in fact, noting that the TTAB proceeding has cost Plaintiff resources. *See* Dkt. No. 19 at 17. According to Plaintiff, under *Utah v. Evans*, 536 U.S. 452, 464 (2002), a party has standing to pursue litigation where the result may affect the outcome of other administrative or judicial proceedings. Plaintiff notes that the TTAB has halted its cancellation proceeding on the grounds that the outcome of this case may affect the cancellation proceeding. Although the Court recognizes that the OTIW's cancellation petition made reference to its historical and ongoing use of "Oneida," the Court concludes that the Department's approval of the OTIW's name change and its listing of the OTIW as "Oneida Nation" as a federally recognized tribal entity in the Federal Register are not relevant to the ongoing TTAB proceeding. As such, reversing the Department's decisions at issue in this case would not affect the cancellation proceeding or the OTIW's prosecution of it and, thus, will not redress this alleged injury in fact.

The requirement that an injury be redressable aims to ensure "that the harm alleged be redressable by a favorable decision." *E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 450 (2d Cir. 2014). "An abstract decision without remedial consequence seems merely advisory, an unnecessary expenditure of judicial resources that burdens the adversary and carries all the

9

traditional risks of making bad law and trespassing on the provinces of the executive and legislature." *E.M.*, 758 F.3d at 450 (quoting Wright, et al., 13A Fed. Prac. & Proc. § 3531.6 (3d ed. 2008)).  "To satisfy the redressability requirement of Article III standing, the plaintiff must show that 'it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 96 (2d Cir. 2017), cert. denied, 138 S. Ct. 926 (2018) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).  This ensures that "the plaintiff who seeks to invoke judicial power" is "in a position to benefit in some personal way." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 39 (1976).

      The Court first notes that the TTAB's decision to halt the cancellation proceeding on the grounds that the outcome of this case *may* affect the cancellation proceeding does not mean that the outcome of this case *will* affect the cancellation proceeding.  *See* Dkt. No. 19-1 at 2.  "It is standard procedure for the Trademark Board to stay administrative proceedings pending the outcome of court litigation . . . . involving related issues." *New Orleans Louisiana Saints LLC & NFL Properties LLC*, 99 U.S.P.Q.2d 1550 (T.T.A.B. July 22, 2011) (quoting 6 McCarthy on Trademarks and Unfair Competition §32:47 (4th ed. updated June 2011)); *see also* Trademark Trial & App. Bd. Man. of Proc. 510.02(a) Suspension, 2018 WL 3386861 (noting that suspension is warranted if there is another relevant proceeding involving only one party).  Thus, the decision to suspend a proceeding does not necessarily mean that an outside litigation will alter the outcome of the TTAB proceeding.  Determining whether the outcome of this litigation will affect the outcome of the OTIW's cancellation proceeding requires examining the allegations in the amended cancellation petition with respect to the claims in this case.

Looking at the grounds for cancellation asserted in the OTIW's amended consolidated petition, the Court finds that the issues before the Court in this case are not material to the OTIW's grounds for cancellation. The OTIW's first set of challenges to Plaintiff's registrations are based on conduct entirely unrelated to the OTIW's rights to Plaintiff's name. The allegations that Plaintiff failed to utilize the registered marks have no connection to the OTIW's rights to the "Oneida" name. *See, e.g.*, Dkt. No. 23-2 at ¶¶ 191-93 (alleging Plaintiff had no bona fide intent to use the "Oneida" mark); ¶¶ 207-08 (alleging Plaintiff abandoned the "Oneida" mark); ¶¶ 211-13 (alleging Plaintiff never used the "Oneida" mark). Since these arguments for cancellation are unrelated to the OTIW's rights to "Oneida Nation," the Court concludes that the outcome of this case will not materially effect their resolution in the TTAB proceeding.

The outcome of this case will also not affect the OTIW's second group of arguments for cancellation, that the OTIW had preexisting marks that resembled Plaintiff's in 2006. These claims are based on filings from 2006, nearly a decade before the actions currently at issue. *See* Dkt. No. 23-2 at ¶¶ 187-88, 214-15. Because the Department's challenged actions occurred in 2015-16, the outcome of this case is not pertinent to showing whether the OTIW had any marks that resembled Plaintiff's marks in 2006.

Finally, the outcome of this case will not help the OTIW establish that Plaintiff knowingly filed fraudulent statements regarding the OTIW's use of "Oneida" to the Trademark Board. The material issue in resolving these trademark fraud claims will be determining whether Plaintiff made a "false statement with the intent to deceive the [United States Patent and Trademark Office] into issuing or maintaining that registration." Dkt. No. 23-1 at 6 (citing *In re Bose Corp.*, 580 F.3d 1240 (Fed. Cir. 2009). Under this standard, "a trademark is obtained fraudulently under

the Lanham Act only if the applicant or registrant knowingly makes a false, material representation with the intent to deceive the PTO." *In re Bose Corp.*, 580 F.3d at 1245.

Here, the Department's decision to approve the OTIW's constitutional amendment to change its name has no bearing on whether Plaintiff was aware of the OTIW's use of "Oneida Nation." As Plaintiff acknowledged, the Department did not notify Plaintiff of its deliberation to approve the amendment. Even if Plaintiff was aware of the proceedings, the actual approval itself is not material in determining fraud, as the central question is whether Plaintiff was aware of the OTIW's use of "Oneida," not whether that use was sanctioned by the Department.

Similarly, whether the Department correctly recognized the OTIW as "Oneida Nation" when it published its list of federally recognized tribal entities is also irrelevant to adjudicating the fraud claims. The last allegedly fraudulent filing occurred on August 10, 2015, several months before the Department published the list in the Federal Register. Because these filings occurred well before the Department listed the OTIW as "Oneida Nation" in the list of federally recognized tribal entities, the publication is not relevant for determining whether Plaintiff filed fraudulent documents in order to protect its trademarks.

Having reviewed the OTIW's cancellation petition before the TTAB, the Court concludes that even if the Court were to reverse the Department's decisions, this reversal would not alter the outcome of the TTAB proceeding. Thus, it is clear that even if the ongoing trademark action is an injury in fact, it is not redressable by this action and cannot be used to establish standing.

*2. Confusion*

Plaintiff also argues that the Department's decision to approve the name change and listing the new name in the Federal Register has caused or will cause confusion between the two entities. Included in the Complaint is an allegation that the OTIW named a golf tournament the "Oneida

12

LPGA Classic." Plaintiff also points to its recent submission as proof that actual confusion has occurred between Plaintiff and the OTIW. The Court, however, disagrees that this injury establishes standing because Plaintiff has failed to show that any alleged potential or actual confusion is directly or indirectly traceable to the Department's actions and that the actual confusion alleged in Plaintiff's supplemental submission are neither injuries in fact nor traceable to the Department's actions at issue in this case.

In order to satisfy the traceability requirement, the alleged injury in fact must be "fairly traceable to the actions of the defendant." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (citation and internal quotation marks omitted). This "ensures that there is a genuine nexus between a plaintiff's injury and a defendant's alleged . . . conduct." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000). Importantly, this requirement "is in large part designed to ensure that the injury complained of is 'not the result of the independent action of some third party not before the court.'" *Id.* at 162 (quoting *Lujan*, 504 U.S. at 560).

Where an "alleged injury flows not directly from the challenged agency action, but rather from independent actions of third parties," the plaintiff must show "that the agency action is at least a substantial factor motivating the third parties' actions." *Tozzi v. U.S. Dep't of Health & Human Servs.*, 271 F.3d 301, 308 (D.C. Cir. 2001) (quotation omitted). "[M]ere unadorned speculation as to the existence of a relationship between the challenged government action and the third-party conduct will not suffice to invoke the federal judicial power." *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 938 (D.C. Cir. 2004) (quotation omitted).

Here, Plaintiff has not established that any confusion is traceable to the Department's decision to approve the OTIW's constitutional amendment or to identify the OTIW as "Oneida Nation" on the list of federally recognized tribal entities. The Department's approval of the

13

OTIW's constitutional amendment to change its name would not, on its own, cause any confusion given that the action only amounted to approving a change to an internal tribal governance document. Further, the publication of the OTIW as "Oneida Nation" as a federally recognized tribal entity could not cause any confusion between Plaintiff and the OTIW because the Department notes that "Oneida Nation" was previously listed as the "Oneida Tribe of Indians of Wisconsin" on the list of federally recognized tribal entities in the Federal Register. *See* 83 Fed. Reg. 34863, 34865 (July 23, 2018).

Plaintiff's examples of confusion do not constitute evidence of confusion traceable to the Department's actions being challenged. First, "not all confusion counts: evidence of actual confusion must show more than a fleeting mix-up of names." *Streamline Production Systems, Inc. v. Streamline Manufacturing, Inc.*, 851 F.3d 440, 457 (5th Cir. 2017). "[S]ecretarial carelessness caused by a failure to check business addresses" are not the sorts of confusion that the law recognizes as an injury. *U.S. Blind Stitch Mach. Corp. v. Union Special Mach. Co.*, 276 F. Supp. 468, 471 (S.D.N.Y. 1968). The two examples submitted by Plaintiff appear to be little more than "secretarial confusion." In both cases, the third party knew which tribal entity it was supposed to be communicating with, as they both had preexisting relationships with the OTIW. Although for some reason, these two communiques were accidentally sent to Plaintiff, these mistakes are of the sort that could be quickly and easily remedied. As such, these two examples provided by Plaintiff are not the sort of confusion that would rise to a sufficient injury in fact necessary to establish standing in the first place. *See Spokeo*, 136 S. Ct. at 1548 (noting an injury "must be 'de facto'; that is, it must actually exist").

However, even if these examples were injuries in fact, they are not traceable to the Department's actions that are currently at issue. Purpora Engineering's misaddressed invoice

identified the correct recipient, the OTIW, and used the correct physical address. The only mistake appears to be that Purpora Engineering somehow found and used Plaintiff's email address instead of the OTIW's. Given that neither challenged action involved the publication of Plaintiff or the OTIW's contact information, the Court does not see how this error could be traced back to the matters currently before the Court.

Similarly, the Court cannot see how the Department's challenged actions could have caused the Indian Health Service to inadvertently send the Request for Corrective Action Plan to Plaintiff instead of the OTIW. The Indian Health Service's letter was a response to an audit submitted by the OTIW. *See* Dkt. No. 31-1 at 2. Thus, the Indian Health Service was clearly aware of which entity it was dealing with when it mistakenly sent the Request for Corrective Action Plan to Plaintiff. Given that the Indian Health Services knew which entity it intended to deal with, the Court finds it implausible that this mistake could be traced back to the Department's actions at issue. For the reasons previously discussed, the approval of the name-change amendment would not cause this sort of confusion as it only approved a change to an internal governing document. It is not the sort of public change that could have caused this mistake. Further, the list of federally recognized tribal entities only serves to verify that a tribal entity has been federally recognized. The mistake in the correspondence occurred well past the stage where the Indian Health Services would have needed to confirm the OTIW's status as a federally recognized tribal entity. As such, the Department's actions have not directly caused this confusion.

Plaintiff has also failed to show that the Department's actions could be a substantial factor in causing the OTIW to engage in any misleading or confusing use of "Oneida Nation." Authorizing an entity to use a name does not "license the commission of what would otherwise be

a tortious act." *Hulburt Oil & Grease Co. v. Hubert Oil & Grease Co.* 371 F.2d 251 254 (7th Cir. 1966). Agencies like the Federal Communications Commission allow businesses to register names for lawful use. *In Re Wsm, Inc.*, 225 U.S.P.Q. 883, 1985 WL 72024, *2 (T.T.A.B. Feb. 25, 1985). The mere fact that a regulatory body authorizes an entity to use a name does not mean that the name is licensed in a trademark sense. *See id.* Such authorizations do not supercede trademark law unless Congress delegated the agency authority to reject names and the agency has promulgated procedures that consider potential confusion when determining whether to permit an entity to use a name. *See State of North Dakota v. Merchants Nat. Bank & Tr. Co., Fargo, N.D.*, 634 F.2d 368, 382 (8th Cir. 1980) (finding a decision by the Comptroller of the Currency authorizing a bank's name change preempted state trademark law); *see also Pathfinder Commc'ns Corp. v. Midwest Commc'ns Co.*, 593 F. Supp. 281, 283 (N.D. Ind. 1984) (noting that the FCC relinquished its role as tradename arbiter after it removed possible confusion as a consideration when issuing call signs).

According to Plaintiff, the Department's stated policy is to automatically adopt any name chosen by a tribe. Further, the section of the Code of Federal Regulations pertinent to the federal recognition and publication of tribal entities does not include any rules allowing the Department to deny federal recognition or refuse to publish said recognition based on a tribal entity's chosen name. *See* 25 C.F.R. § 83.6. Given that the Department does not have rules or procedures in place to reject a tribal entity's proposed name, the Court concludes that the Department's actions did not grant the OTIW any particular rights to the "Oneida Nation" name that could be used against Plaintiff.

The Department cannot be held responsible for the OTIW engaging in conduct in which it was already entitled to engage. The Department did not suddenly grant the OTIW permission to

16

use "Oneida" in a previously forbidden manner, so any lawful use of "Oneida" was always permissible. Similarly any unlawful use of "Oneida" was always unlawful and would leave the OTIW liable to Plaintiff. Such a reckless course of action by the OTIW would clearly be independent conduct and not traceable to the Department's actions currently at issue. Thus, the Court finds that any confusing or misleading use of "Oneida" by the OTIW would not be traceable to the Department's approval of the OTIW's constitutional amendment to change its name or identification of the OTIW as "Oneida Nation" in the list of federally recognized tribal entities in the Federal Register.

Even Plaintiff's single concrete example of an action take by the OTIW that might cause confusion—the OTIW's attempt to name a golf tournament the "Oneida LPGA Classic"—cannot be causally traced to the Department.[1] First, the name of the tournament was announced before the OTIW's name change was published in the Federal Register, making it impossible that the List's identification of the OTIW as "Oneida Nation" caused the OTIW to name the tournament the "Oneida LPGA Classic." Second, the OTIW's name always contained "Oneida," so the fact that the OTIW named the tournament the "Oneida LPGA Classic" is not traceable to the Department's approval of the OTIW's constitutional amendment. The "Oneida LPGA Classic" would be an equally fitting title for a tournament hosted by the Oneida Tribe of Indians of Wisconsin as it would be for a tournament hosted by the Oneida Nation, so there is no reason to believe that the OTIW would have selected a different name for the golf tournament had the Department rejected the amendment. As such, Plaintiff has failed to demonstrate that any confusion could be traced to the Department.

---

[1] The Court notes that it is unclear whether the OTIW even used the name "Oneida LPGA Classic" given that the OTIW renamed the tournament to the "Thornbury Creek LPGA Classic" after Plaintiff sent a cease and desist letter. *See* Dkt. No. 1-4 at ¶¶ 27-28.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss for lack of subject matter jurisdiction (Dkt. No. 14) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 24, 2018
       Albany, New York

Mae A. D'Agostino
U.S. District Judge